## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

TONYA R. DILL                                                                  PLAINTIFF

V.                            No. 4:22-CV-00948-LPR-ERE

SOCIAL SECURITY COMMISSION                                DEFENDANT

## RECOMMENDED DISPOSITION

This Recommendation has been sent to United States District Judge Lee Rudofsky. You may file written objections to all or part of this Recommendation. Your objections must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen days of the date of this Recommendation. If you do not object, you risk waiving the right to appeal questions of fact and Judge Rudofsky may adopt this Recommendation without independently reviewing the record.

## I.    Background

On July 15, 2019, Ms. Tonya Dill protectively filed an application for benefits due to nausea, fatigue, joint pain, muscle pain, swelling, anxiety, a "rash with flares", and numbness. *Tr. 16, 323.*

Ms. Dill's claim was denied initially and upon reconsideration. At Ms. Dill's request, an Administrative Law Judge ("ALJ"), on January 11, 2021, held a telephonic hearing where Ms. Dill appeared with her lawyer, and the ALJ heard

1

testimony from Ms. Dill and a vocational expert ("VE"). *Tr. 37-76.* On July 28, 2021, the ALJ issued a decision finding that Ms. Dill was not disabled. *Tr. 21-33.* The Appeals Council denied Ms. Dill's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-4.*

Ms. Dill, who was forty-seven years old at the time of the hearing, graduated high school and has past relevant work experience as a waitress, cook, and meat counter clerk. *Tr. 44, 47, 72.*

## II.    The ALJ's Decision[1]

The ALJ found that Ms. Dill had not engaged in substantial gainful activity since October 1, 2017, the alleged onset date. *Tr. 19.* He concluded that Ms. Dill had the following severe impairments: sacroiliac degenerative changes, bilateral Achilles insertional enthesopathy changes, hepatitis B, left knee degenerative joint disease – status post-meniscus tear, vertigo, chronic obstructive pulmonary disorder ("COPD"), obesity, anxiety, depression, and post-traumatic stress disorder ("PTSD"). *Id.* However, the ALJ concluded that Ms. Dill did not have an impairment

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g); 20 C.F.R. § 416.920(a)-(g).

or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 20.*

According to the ALJ, Ms. Dill had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) occasional climbing, balancing, crawling, kneeling, stooping, and crouching; (2) no exposure to hazards, such as unprotected heights and dangerous, moving machinery; (3) occasional exposure to atmospheric conditions, such as temperature extremes, fumes, noxious odors, dusts, mists, gases, and poor ventilation; (4) simple, routine, repetitive work, but not at a production-rate pace; and (5) simple work-related decisions. *Tr. 23.*

In response to hypothetical questions incorporating the above limitations, the VE testified that a significant number of potential jobs were available in the national economy, including cafeteria attendant and cashier. *Tr. 27-28, 73.* Accordingly, the ALJ determined that Ms. Dill was not disabled.

## III.   Discussion

### A.    Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence]

adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

**B.    Ms. Dill's Arguments for Reversal.**

Ms. Dill contends that the Commissioner's decision is not supported by substantial evidence, because the ALJ erred by: (1) failing to develop the record fully and fairly; (2) failing to find her personality disorder to be a severe impairment at Step Two; (3) improperly assessing her credibility; and (4) finding an RFC exceeding her ability. *Doc. 15 at 2.* After carefully reviewing the record as a whole, the undersigned recommends affirming the Commissioner.

**C.    Analysis**

**1.    Developing the Record Further Was Not Necessary.**

Ms. Dill argues that the ALJ failed to "fully and fairly develop the record" regarding both her physical and mental impairments. *Id.*

As to her physical impairments, Ms. Dill contends that ALJ "concluded that [she] could engage in sedentary[2] work-related activities without any medical evidence to support such a finding . . . ." *Id. at 6.* She argues that the ALJ should not have created RFC restrictions related to her COPD without supporting medical opinion evidence, and she faults the ALJ for failing to include RFC restrictions for the severe obesity impairment that he found at Step Two. *Doc. 15 at 7-8.* Ms. Dill complains that the ALJ's "light" exertional restriction is based upon the DDS state agency opinion evidence with no treating source or examining source evidence. She faults the ALJ for "literally doubl[ing] the quantity of body parts meeting severity yet keep[ing] the identical light RFC that the initial DDS Dr. Snyder had only for skin disorder." *Id. at 7.* Both impairments – COPD and obesity – were accounted for in the RFC and supported by the record. *Tr. 21-22, 1094, 1349, 1391, 1393, 1399, 1501.* Ms. Dill has not identified any additional, necessary restrictions. When "the medical record [is] adequately developed, the ALJ [is] not required to seek additional information" from a treating physician. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Additionally, the RFC was more limited than Dr. Snyder recommended and none of the additional medically determinable impairments supported a sedentary RFC.

---

[2] Presumably this is a typo, since the ALJ found that Mr. Dill could perform light work, with some limitations. *Doc. 23.*

As for her mental impairments, Ms. Dill contends that, since the ALJ rejected the only examining source opinion evidence, a report authored by psychologist Dr. Patricia Griffen, he should have requested a supplemental or second consultative examination before adjudication. *Doc. 15 at 8.* "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932. Additionally, the ALJ properly pointed out that Dr. Griffen's opinion was a "one-time examination" that was "highly inconsistent with the longitudinal" record regarding Ms. Dill's mental limitations. *Tr. 26.*

"While an ALJ should recontact a treating or consulting physician if a critical issue is undeveloped, the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (cleaned up).

Ms. Dill "has the burden to offer the evidence necessary to make a valid decision about her claim." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). She "bears a heavy burden in showing the record has been inadequately developed. She must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007). "[A]n ALJ does have a duty to develop the record, [but] this duty is not never-ending . . . ." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

The ALJ had sufficient evidence to resolve Ms. Dill's claim. The ALJ noted that he "found that the opinion of the DDS medical consultants (physical) was generally persuasive." *Tr. 26.* Additionally, he found that the DDS "opinion was consistent with the claimant's medical evidence and activities of daily living," but "later evidence supports additional nonexertional restrictions." *Id.*

Further, the ALJ considered Ms. Dill's mental impairments and found that her anxiety, depression, and PTSD were severe impairments. *Tr. 19.* He concluded, however, that her histrionic personality disorder was not a severe impairment because it minimally affected her ability to work. *Id.* Again, the ALJ considered Dr. Griffen's opinion but found it unpersuasive because her findings were not supported and were inconsistent with the treatment record. *Tr. 26.*

Finally, Ms. Dill had ample opportunity to provide any additional evidence which she thought should have been included. At the hearing, the ALJ asked Ms. Dill's attorney if the record was complete. *Tr. 42.* He advised that it was complete, but requested that the record be left open for twenty-one days so that a recent appointment record could be added. *Tr. 42-43.* The ALJ granted the request. *Tr. 43.* These records were submitted after the hearing and included in the record.

Based on the record as a whole, the ALJ carefully considered Ms. Dill's impairments and had enough information to make an informed decision. Ms. Dill has not identified any crucial issue that was undeveloped.

7

### 2. The ALJ's Step Two Analysis was Sufficient.

Ms. Dill challenges the ALJ's Step Two findings, arguing that the ALJ should have found her histrionic personality disorder to be a "severe" impairment. *Doc. 15. at 10*. Ms. Dill points to the fact that the ALJ's Step Two analysis is silent on her personality disorder. As a result, the RFC does not include social work restrictions, even though "the hallmark of histrionics and personality disorders is social and interpersonal communication difficulties." *Doc. 15 at 12*. Ms. Dill contends that the Step Five jobs – cashier and cafeteria attendant – both require interpersonal contact with customers and proper consideration of her personality disorder would have eliminated these jobs from the list of available jobs. *Id.*

Ms. Dill cites Dr. Griffin's finding of histrionic personality disorder as support that it was a severe impairment. *Tr. 876-80.* Again, the ALJ found this opinion unpersuasive. The ALJ noted "[t]his was a one-time examination, and the level of limitations in this opinion is unsupported and highly inconsistent with the longitudinal record of mental status examination in the claimant's treating record outlined earlier, the claimant's minimal mental health treatment, and her activity level discussed earlier." *Tr. 26.* Additionally, "the ALJ *did* impose a limitation to unskilled work, with simple tasks and simple supervision. These limitations properly incorporated any mental symptoms, which admittedly were few and far between, and certainly did not rise to the level of disabling." *Swad v. Soc. Sec. Admin.*, No.

4:18CV00255 BSM/PSH, 2019 WL 1212089, at *3 (E.D. Ark. Mar. 14, 2019) (emphasis in original).[3]

The ALJ also noted that Ms. Dill "did not receive a level of collateral support or mental health treatment that was usually associated with chronic or debilitating mental illness." *Tr. 26.* Additionally, "[t]he complaints, observations, frequency of office visits, and the level of care were not consistent with reported limitations." *Id.* Ms. Dill's "ability to interact appropriately at medical providers and perform activities of daily living support intact adult functional capacity over time, across a range of activities and situations." *Id.* The ALJ specifically found that Ms. Dill had "mild" limitations in interacting with others. *Tr. 22.*

Ms. Dill argues that there was "no discussion of DDS psychological consultant" Brad Williams' opinion. However, Dr. Williams found only moderate limitations or no limitations, which is consistent with the ALJ's finding. *Tr. 139-42.* At most, the ALJ's failure to discuss Dr. Williams' opinion is harmless.

Substantial evidence supports the ALJ's conclusions at Step Two.

**3.    The ALJ's Credibility Analysis Was Adequate.**

When evaluating the credibility of a claimant's subjective complaints, an ALJ must consider the *Polaski* factors, which include "the claimant's prior work history;

---

[3] Report and recommendation adopted, No. 4:18-CV-00255 BSM, 2019 WL 5068462 (E.D. Ark. July 29, 2019).

daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (quotation omitted) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). Also relevant is the absence of objective medical evidence supporting the claimant's subjective complaints, although the ALJ cannot discount a claimant's credibility based on this consideration alone. *Id*. at 932. The ALJ need not explicitly discuss each of the *Polaski* factors in the written decision as long as it is clear that they were considered. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). The Court normally should defer to an ALJ's credibility determination. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021). An ALJ's brevity is not reversible error so long as the ALJ's reasoning allows for "appropriate judicial review." *Id.*

Ms. Dill asserts that the ALJ did not comply with the *Polaski* factors and, instead, improperly based his credibility finding on her lack of treatment. *Doc. 15 at 13.* At the hearing, Ms. Dill testified as to her impairments, symptoms, limitations, daily activities, and work history. Specifically, she testified that she lived with her disabled mother; was able to use a cellphone to access Facebook; attended church weekly; quit smoking cigarettes four weeks before the hearing; quit using marijuana in 2020; has not had any mental health counseling; and does better with medication. *Tr. 46, 56, 58-60, 62, 67.* She also testified she was very limited due to her vasculitis,

10

breathing, joint swelling, and anxiety; was unable to stand more than five minutes before pain; could walk for only five to ten minutes before needing a break; and could sit for only twenty minutes. *Tr. 66, 68-69.*

The ALJ considered Ms. Dill's activities of daily living, as well as the medical evidence, and weighed them against her subjective complaints. He noted that her "statements about the intensity, persistence, and limiting effects of her symptoms, are inconsistent with the evidence of record." *Tr. 24.* The ALJ recognized that Ms. Dill "acknowledged driving, using a smartphone and social media, and was not going to counseling. She acknowledged doing better on medication. This overall record supports the conclusion claimant can perform a modified range of light work activity." *Tr. 26.*

Ms. Dill contends that the ALJ erred in focusing on her lack of treatment for her mental and physical complaints. *Doc. No. 15 at 13.* The ALJ noted that Ms. Dill "has not had mental health counseling" and had a "relatively conservative treatment history . . . consistent with [her] improvement with treatment." *Tr. 24, 26, 60.* The ALJ properly considered the absence of more significant treatment. *Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (upholding ALJ's finding that conservative treatment tended to show that plaintiff's impairments were not disabling) (citation omitted). Additionally, although Ms. Dill argues that economic

justifications would account for her lack of treatment, she fails to identify anything in the record suggesting that her treatment was limited for that reason.

Based on the evidence as a whole, the ALJ's findings were supported by the record and there is no reason to depart from the deference normally given to the ALJ's credibility determination.

### 4.    The RFC is Supported by the Record as a Whole.

Ms. Dill contends that the ALJ erred in his RFC finding, because "it was not supported by either examining or treating source opinion evidence." *Doc. 15 at 14.* Specifically, Ms. Dill complains that the RFC contained no work restrictions based on her lower extremity impairments, and "the ALJ's 'classic' unskilled RFC does nothing to account for Plaintiff's serious personality disorder . . . ." *Id. at 15.*

Again, "[w]ith the medical record adequately developed, the ALJ was not required to seek additional information" from a treating physician. *Hensley*, 829 F.3d at 932. "A claimant's RFC is 'the most' that the claimant can do in a work setting despite her limitations." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (quoting 20 C.F.R. § 404.1545(a)(1)). A claimant "bears the burden of proof to establish her RFC." *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019). "An ALJ determines a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th

Cir. 2017) (quotations omitted). Ultimately, the RFC finding "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020).

Ms. Dill provided no specific medical record showing walking or standing difficulties. The ALJ specifically considered her lower extremity issues and noted that the record showed that, after knee surgery, her gait was normal. *Tr. 21, 24, 757, 1115.* The ALJ also found no evidence of any foot problems and no need for an assistive device while walking. *Tr. 21.* Ms. Dill tested normal on multiple examinations and had normal muscle strength and intact sensation. *Tr. 24.* Additionally, the ALJ accounted for Ms. Dill's lower extremity impairments by including postural limitations in the RFC. The ALJ adequately considered Ms. Dill's lower extremity issues and concluded she required no further lower extremity restrictions.

Ms. Dill contends that Dr. Griffen's opinion would have supported an inability to work. *Doc. 15 at 15-16*, *Tr. 876.* However, as already discussed, the ALJ considered this opinion and found it unpersuasive. *Tr. 26.*

The RFC finding reflected the limitations which the ALJ found to be credible, and it is supported by the medical evidence as a whole.

## IV. Conclusion

The ALJ applied proper legal standards in evaluating Ms. Dill's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the decision and enter judgment in favor of the Commissioner.

Dated 17 July 2023.

UNITED STATES MAGISTRATE JUDGE